ORIGI...

1   Jon M. Leader (Cal. Bar No. 147059)
2   jleader@lglaw.la
    Gary J. Gorham (Cal. Bar No. 171061)
3   ggorham@lglaw.la
4   Andrew W. Twietmeyer (Cal. Bar No. 254436)
    atwietmeyer@lglaw.la
5   LEADER GORHAM LLP
6   1990 South Bundy Drive, Suite 390
    Los Angeles, California 90025
7   Telephone:  (310) 696-3300
8   Telecopy:    (310) 696-3305

9
    Karen J. Bernstein (*Pro Hac Vice* Admission Pending)
10  kjb@karenbernsteinlaw.com
    Law Offices of Karen J. Bernstein, LLC
11  100 Park Avenue, Suite 1600
    New York, New York  10017
12  Telephone: (212) 339-9955
13  Telecopy:    (212) 339-0046

14
    Attorneys for Defendant
15  VL RAYMER

16

17

18                UNITED STATES DISTRICT COURT
          FOR THE CENTRAL DISTRICT OF CALIFORNIA
19                     WESTERN DIVISION

20  INDUSTRY CONCEPT HOLDINGS,
21  INC., a Colorado corporation and          **DOCUMENT FILED UNDER**
    PRIMP,                                     **SEAL**
22  INC., a Colorado corporation,

23                                             Case No. CV 11-04444 CAS (JEMx)
             Plaintiffs,
24                                             **DEFENDANT VL RAYMER'S**
                                               **OPPOSITION TO ORDER TO**
25       v.                                    **SHOW CAUSE RE**
                                               **PRELIMINARY INJUNCTION**
26  ALAN ELGORT, an individual, GREG           **AND SEIZURE ORDER;**
27  LORBER, an individual, LARRY               **MEMORANDUM OF POINTS**
    MONTOYA, an individual, ANDREW             **AND AUTHORITIES IN**

28

**ORIGINAL**

FILED

2011 JUL -6 PM 3: 42

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1  Jon M. Leader (Cal. Bar No. 147059)
2  jleader@lglaw.la
   Gary J. Gorham (Cal. Bar No. 171061)
3  ggorham@lglaw.la
   Andrew W. Twietmeyer (Cal. Bar No. 254436)
4  atwietmeyer@lglaw.la
   LEADER GORHAM LLP
5  1990 South Bundy Drive, Suite 390
6  Los Angeles, California 90025
7  Telephone:  (310) 696-3300
   Telecopy:   (310) 696-3305
8

9  Karen J. Bernstein (*Pro Hac Vice* Admission Pending)
10 kjb@karenbernsteinlaw.com
   Law Offices of Karen J. Bernstein, LLC
11 100 Park Avenue, Suite 1600
12 New York, New York  10017
   Telephone: (212) 339-9955
13 Telecopy:   (212) 339-0046
14
   Attorneys for Defendant
15 VL RAYMER
16

17                UNITED STATES DISTRICT COURT
18       FOR THE CENTRAL DISTRICT OF CALIFORNIA
                        WESTERN DIVISION
19

20 INDUSTRY CONCEPT HOLDINGS,          **DOCUMENT FILED UNDER**
   INC., a Colorado corporation and    **SEAL**
21 PRIMP,
22 INC., a Colorado corporation,       Case No. CV 11-04444 CAS (JEMx)

23        Plaintiffs,                  **DEFENDANT VL RAYMER'S**
                                       **OPPOSITION TO ORDER TO**
24                                     **SHOW CAUSE RE**
25        v.                           **PRELIMINARY INJUNCTION**
                                       **AND SEIZURE ORDER;**
26 ALAN ELGORT, an individual, GREG    **MEMORANDUM OF POINTS**
   LORBER, an individual, LARRY        **AND AUTHORITIES IN**
27 MONTOYA, an individual, ANDREW
28

| | |
|---|---|
| 1  PAYNE, an individual, FANNY<br>    GARCIA, an individual, PACIFIC<br>2  APPAREL, LLC, a Nevada corporation,<br>   JULIE SAENZ, an individual,<br>3  HAUTLOOK, a California corporation,<br>4  MARQUETTE COMMERCIAL<br>   FINANCE, a Texas corporation, VL<br>5  RAYMER, an individual, and JOHN<br>6  DOES 1 through 10,<br>7<br>        Defendants.<br>8 | **SUPPORT THEREOF**<br><br>[Supporting Declarations of VL<br>Raymer, Karen J. Bernstein and Jon<br>M. Leader concurrently filed]<br><br>Date:  July 7, 2011<br>Time:  10:00 a.m.<br>Place: Courtroom 5<br>        312 No. Spring Street<br>        Los Angeles, CA 90012 |
| 9 | |
| 10 | Complaint filed: May 24, 2011<br>Trial Date:      None Set |
| 11 | Hearing Date:   July 7, 2011 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on July 7, 2011, at 10:00 a.m., in

Courtroom 5 of the above-referenced Court, located at 312 N. Spring Street,

Los Angeles, California 90012, before the Honorable Christina A. Snyder,

Defendant VL RAYMER ("Ms. Raymer") will oppose Plaintiffs' application for

a Preliminary Injunction ("Plaintiffs'Application").  Plaintiffs' Application

should be denied as to Ms. Raymer because she is not manufacturing,

importing, exporting, distributing, shipping, introducing into commerce,

offering for sale, selling, returning, disposing of, packaging, re-packaging,

marketing, advertising, or supplying any goods that bear, embody, display or

affix the Primp and Love Crush marks, because she has never been and is not in

the apparel business.

    This opposition is based on this Notice, the Memorandum of Points and

Authorities, the Declaration of VL Raymer in Support of the Opposition to

Plaintiffs' Application, the Declaration of Karen J. Bernstein in Support of the

Opposition to Plaintiff's Application filed concurrently herewith, Defendant VL

1

1   Raymer's Joinder in Motion for Objections to Evidence Filed by Marquette

2   Commercial Finance, and all facts of which the Court may take judicial notice,

3   and such further evidence and argument as the Court may consider at any

4   hearing on Plaintiffs' Application.

LEADER GORHAM LLP

5

6   Dated:  July 6, 2011

7   By: _____

Gary J. Gorham

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  FACTS ...............................................................................................................2

   A. Relevant Facts............................................................................................2

   B. Procedural History .....................................................................................4

III. ARGUMENT ......................................................................................................5

   A. Plaintiffs are Not "Likely to Succeed on the Merits"...............................6

   B. There is No Irreparable Harm to Plaintiffs...............................................9

   C. If Proven at Trial, Monetary Damages Would Be More Appropriate ...............10

   D. The Balance of Equities Tips Decidedly in Ms. Raymer's Favor.......................11

     1.   Issuance of the Preliminary Injunction Will Seriously Harm Ms. Raymer .11

     2.   Any Harm to Plaintiffs Will Be Minimal If Preliminary Injunctive Relief is Denied ..........................................................................................................11

     3.   Plaintiff Comes to this Court with Unclean Hands and the Delay in Bringing a Preliminary Injunction Evidence that Preliminary Injunctive Relief is an Improper Remedy ........................................................................................11

   E. Issuance of A Preliminary Injunction is Not in the Public Interest.....................12

   F. A Seizure Order is an Inappropriate Remedy Since There is Nothing to Seize .12

IV.  CONCLUSION ................................................................................................13

i

**DEFENDANT VL RAYMER'S OPPOSITION TO PLAINTIFFS' OSC RE PRELIMINARY INJUNCTION**

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amoco Production Co. v. Village of Gambell, Alaska,*
480 U.S. 531 (1987)............................................................................................16

*Ashcroft v. American Civil Liberties Union,*
542 U.S. 656, 124 S. Ct. 2783 (2004) ..............................................................12

*Caribbean Marine Services Co., Inc. v. Baldrige,*
844 F.2d 668 (9th Cir. 1988) .............................................................................15

*City of Angoon v. Marsh,*
749 F.2d 1413 (9th Cir. 1984) ...........................................................................12

*City of Los Angeles v. County of Kern,*
462 F. Supp. 2d 1105 (C.D. Cal. 2006) .............................................................11

*Dahl v. HEM Pharmaceuticals. Corp.,*
7 F.3d 1399 (9th Cir. 1993) ...............................................................................11

*Dogloo, Inc. v. Doskocil Mfg. Co., Inc.,*
893 F. Supp. 911 (C.D. Cal. 1995)....................................................................16

*Earth Tech. Corp. v. Envtl. Research & Tech., Inc.,*
No. 82-6375 AWT, 1983 U.S. Dist. LEXIS 18316 (C.D. Cal. Mar. 23, 1983).15

*Goldie's Bookstore, Inc. v. Superior Court,*
739 F.2d 466 (9th Cir. 1984) .............................................................................15

*Los Angeles Memorial Coliseum Comm'n v. NFL,*
634 F.2d 1197 (9th Cir. 1980) ...........................................................................16

*Playboy Enters. v. Netscape Communs. Corp.,*
55 F. Supp. 2d 1070 (C.D. Cal. 1999)...............................................................16

*Schrier v. University of Colorado,*
427 F.3d 1253 (10th Cir. 2005) .........................................................................11

*Stanley v. University of So. Calif,*
13 F.3d 1313 (9th Cir. 1994) .............................................................................14

ii

*Steakhouse, Inc. v. City of Raleigh, N.C.,*
    166 F.3d 634 (4th Cir. 1999) ................................................................. 16

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982)................................................................................ 14

*Winter v. Natural Resources Defense Council, Inc.,*
    555 U.S. 7, 129 S. Ct. 365 (2008) ........................................... 11, 15, 17

STATUTES

15 U.S.C. § 1116(d)(4)(B)(iii) ............................................................... 18

15 U.S.C. § 1125(c)(2)(A) ...................................................................... 13

CA Business and Professions Code Sections 14320, 14340, and 14330 ............... 14

DEFENDANT VL RAYMER'S OPPOSITION TO PLAINTIFFS' OSC RE PRELIMINARY INJUNCTION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The allegations made against Ms. Raymer in the instant action are nothing but a work of fiction. Plaintiffs appear to have devised their Complaint against Ms. Raymer for the sole purpose of attempting to require Ms. Raymer to transfer or abandon the domain name, Primp.com (the "Domain Name"), to Plaintiffs, which has been registered to Ms. Raymer for *thirteen years*. Ms. Raymer's use of the Domain Name predates Plaintiffs' use of the allegedly infringed mark by *five years*. The Domain Name is not used to market or sell apparel of any kind, and Ms. Raymer never has been involved in the apparel industry, whether in conjunction with the Domain Name or otherwise. She has never owned a business that sells apparel. She has never imported or distributed apparel. Plaintiffs have no legitimate claim against Ms. Raymer for anything.

Plaintiffs' Application inappropriately lumps Ms. Raymer with the other named defendants, which appear to operate in the apparel industry. Plaintiffs accuse Ms. Raymer, in the complaint of counterfeiting. Those allegations are false. Among other things, Ms. Raymer buys and sells domain names just like people invest in the stock market. Ms. Raymer has been the continuous registrant of the Domain Name for years before Plaintiffs ever existed. Ms. Raymer is not the registrant of record of any domain names containing the words, "Love" or "Crush" or "Love Crush," so it is quite unsettling that counterfeiting allegations would be lodged against Ms. Raymer in federal court.

The instant action involves facts and parties that have absolutely nothing to do with Ms. Raymer. She does not know any of the defendants and has had absolutely no business dealings with them, so she is not "related" to the other named defendants as alleged by Plaintiffs.

1

1    Plaintiffs cannot meet their burden of demonstrating need for the extraordinary
2    remedy of a preliminary injunction against Ms. Raymer, because they will not prevail
3    on the merits of the case. Nor is there any reason for injunctive relief, because the
4    Domain Name is completely unrelated to the sale of apparel, and has nothing to do at
5    all with the counterfeiting alleged by Plaintiffs. Nor is there an emergency. Plaintiffs
6    sat on their rights for years, only to turn around and declare an emergency.

7    Indeed, a review of Plaintiffs' moving papers in support of the Application fail
8    to reveal what Plaintiffs seek to restrain since Ms. Raymer does not sell apparel. This
9    is fundamentally unfair to Ms. Raymer, especially since she has nothing to do with the
10   apparel business.

11   For the foregoing reasons and more specifically presented herewith, Ms. Raymer
12   respectfully requests the Court deny Plaintiffs' Application with respect to Ms.
13   Raymer or, in the event the Court denies Ms. Raymer's opposition to Plaintiffs'
14   Application, provide Ms. Raymer with additional time to supplement her opposition
15   and to brief this Court as she becomes aware of additional developments and facts to
16   support her defense in light of the time constraints based on the facts set forth below.

17                              **II.    FACTS**

18   **A.    Relevant Facts**

19   In or around 1998, Ms. Raymer registered the domain name, Primp.com.

20   On April 26, 2011, counsel for Plaintiffs e-mailed a letter dated April 23, 2011
21   to Ms. Raymer demanding she cease and desist using the Domain Name and to transfer
22   it to Plaintiffs. There was no mention of the mark LOVE CRUSH in the letter to put
23   Ms. Raymer on notice of Plaintiffs' purported superior trademark rights. Thereafter,
24   on May 18, 2011, Ms. Raymer's former attorney responded that Ms. Raymer could not
25   have been aware of the PRIMP trademark at the time she registered the Domain Name
26   in 1998 because Plaintiffs' use of the tradename and trademark for PRIMP had not yet
27   begun, so she did not register the Domain Name in bad faith.

28

2

1      On June 7, 2011, five days after the cut-off date for defendants to file their

2  oppositions to Plaintiffs' Application, Plaintiffs' counsel sent another e-mail to Ms.

3  Raymer, attaching the Complaint and application for a Temporary Restraining

4  Order/Seizure Order and also advising Ms. Raymer that she had been "served," which

5  was factually and legally incorrect.  Plaintiffs' counsel asked Ms. Raymer for an

6  address for services of process, but Ms. Raymer was shocked and not wishing to

7  represent herself *pro se*, she searched for suitable trial counsel to represent her in the

8  instant litigation.

9      Subsequently, Ms. Raymer secured a consultation with Attorney Bernstein who

10  is admitted in New York.  On June 20, 2011, Ms. Bernstein telephoned Plaintiffs'

11  counsel in an effort to convince Plaintiffs to drop their frivolous claims against Ms.

12  Raymer.  Plaintiffs counsel declined and sent yet another e-mail later to Ms. Raymer

13  on June 20, 2011 requesting she again provide an address for service of process.

14  Plaintiffs' counsel's June 20, 2011 e-mail did not advise Ms. Raymer that the June 8,

15  2011 OSC hearing had been adjourned to July 7, 2011 and briefs opposing Plaintiffs'

16  Application were due on June 23, 2011.

17      Thereafter, in or around June 21, 2011, Ms. Raymer formally retained Attorney

18  Bernstein, and with Ms. Bernstein's assistance she sought to find and secure local

19  counsel admitted in the State of California to represent her locally.  On June 30, 2011,

20  one week after briefs were to be filed in opposition to Plaintiffs' Application, Ms.

21  Raymer retained the firm of Leader Gorham to serve as local counsel on her behalf.

22  As soon as all counsel were secured, Ms. Bernstein contacted counsel for co-

23  Defendant Marquette Commercial Finance who advised her about the June 23, 2011

24  deadline for briefing the oppositions to Plaintiffs' Application, as well as the July 7,

25  2011 OSC hearing.

26      Due to the July 4 Holiday, it was not until July 5 that Ms. Bernstein had a

27  teleconference with Plaintiffs' attorney to advise her that she was authorized to accept

28

3

1  service of the complaint and all papers in the instant action. Plaintiffs' counsel advised
2  Ms. Bernstein that she would deliver said copies of all the papers in this matter to
3  counsel at the July 7, 2011 OSC Hearing. Ms. Bernstein also asked Plaintiffs' counsel
4  what Plaintiffs hoped to restrain Ms. Raymer from doing if the Preliminary Injunction
5  was issued. Plaintiffs' counsel stated that her client seeks to prohibit Ms. Raymer from
6  using the Domain Name, but there is nowhere in Plaintiffs' Application that requests
7  such relief.

8       Even though Ms. Raymer has yet to be formally served with all of the papers in
9  the instant matter, she respectfully requests that she be heard on Plaintiffs' Application
10  only and reserves all other rights.

11      **B.   Procedural History**

12       Plaintiffs commenced the instant action against all of the defendants, including
13  Ms. Raymer, by filing a complaint on May 24, 2011. Contemporaneously with the
14  filing of the complaint, Plaintiffs, without giving notice to Ms. Raymer, also sought *ex*
15  *parte* orders (1) sealing the instant action; and (2) filing for a temporary protective
16  order, seizure order and OSC re Preliminary Injunction – both of which were granted
17  on May 24, 2011 and May 25, 2011, respectively. The OSC re Preliminary Injunction
18  ordered a hearing for June 8, 2011.

19       As discussed, *supra*, Plaintiffs' June 7, 2011 e-mail to Ms. Raymer attached
20  only the Summons, the Complaint, and the application for the Temporary Restraining
21  Order/Preliminary Injunction, but it was not until June 30, 2011 that Ms. Raymer knew
22  that there were additional documents filed in support of the TRO, Seizure Order, and
23  Preliminary Injunction, which included all the supporting declarations, because
24  Plaintiffs' counsel withheld this information from her. Indeed, Ms. Raymer was
25  unaware that any other documents had been filed with the Court in the instant litigation
26  or that the OSC Hearing had been adjourned until July 7, 2011 with opposing briefs
27  due on June 23, 2011until after she recently secured trial counsel, who conferred with
28

1  counsel for co-Defendant Marquette Commercial Finance. At the time, Ms. Raymer
2  received the June 7, 2011 and June 20, 2011 e-mails from Plaintiffs' counsel she
3  thought it was too late to file an opposition and that she might be subject to the
4  Preliminary Injunction since the June 8, 2011 hearing date had already come and gone.
5  This was so especially because the docket in this matter is sealed, which made it
6  impossible to know that the June 8, 2011 hearing had been adjourned to July 7, 2011
7  with oppositions to be filed by June 23, 2011.

8      Accordingly, Raymer respectfully requests the Court permit her to submit her
9  Opposition to Plaintiffs' Application, despite the June 23, 2011 cut-off date, and be
10  permitted to have her counsel (including Ms. Bernstein, whose *pro hac vice* admission
11  is pending) appear at the July 7, 2011 OSC hearing to object to issuance of the
12  Preliminary Injunction. Given the very tight time constraints as discussed *supra*, Ms.
13  Raymer also respectfully requests the Court allow her additional time to supplement
14  her Opposition and brief this Court as she becomes aware of additional developments
15  and facts to support her defense in the event the Court does not deny Plaintiffs'
16  Application against Ms. Raymer.

## III.   ARGUMENT

18      A "preliminary injunction is an extraordinary remedy never awarded as of
19  right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365,
20  376 (2008). To prevail on their request for a preliminary injunction, Plaintiffs must
21  prove: (1) a likelihood of success on the merits of their claims; (2) a likelihood that
22  Plaintiffs will suffer irreparable harm in the absence of preliminary relief; (3) that the
23  balance of equities tips in Plaintiffs' favor; and (4) that an injunction is in the public
24  interest. *Id.*, 129 S. Ct. at 374.

25      Preliminary injunctive relief is "disfavored" and is "more closely scrutinized" by
26  the courts. *See generally, Schrier v. University of Colorado*, 427 F.3d 1253, 1259
27  (10th Cir. 2005); *see also Dahl v. HEM Pharmaceuticals. Corp.*, 7 F.3d 1399, 1403

28

1  (9th Cir. 1993) ("mandatory preliminary relief" is subject to heightened scrutiny and
2  should not be issued unless the facts and law clearly favor the moving party").

3    Here, Plaintiffs will fail to meet their burden. Plaintiffs seek mandatory
4  injunctive relief that does not specify what, if anything, Ms. Raymer is to be restrained
5  from since she has never been and is not in the apparel industry.

6    Courts deny preliminary injunctive relief when "granting the preliminary
7  injunction would give the movant substantially the same relief it would obtain after a
8  trial on the merits." *City of Los Angeles v. County of Kern*, 462 F. Supp. 2d 1105,
9  1111 (C.D. Cal. 2006).

10    In the instant case, Ms. Raymer buys and sells domains, among other things, and
11  has never operated in the apparel industry, so she is not "manufacturing, importing,
12  exporting, distributing, shipping, introducing into commerce, offering for sale, selling,
13  returning, disposing of, packaging, re-packaging, marketing, advertising, or supplying
14  **any goods** that bear, embody, display, or affix the Primp mark and Love Crush mark,"
15  because she does not sell any "goods." *See* Plaintiffs' Temporary Restraining Order;
16  Seizure Order and Order to Show Cause re Preliminary Injunction, at 7. Accordingly,
17  since there is no continuing activity of sales of goods and any damages sustained in
18  this matter could be assessed at trial.

19    **A.**  **Plaintiffs are Not "Likely to Succeed on the Merits"**

20    Plaintiffs must prove they are "likely" to succeed on the merits of their claims.
21  *See Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 665, 124 S. Ct. 2783,
22  2791 (2004). The extraordinary remedy of a preliminary injunction places a heavy
23  burden on Plaintiffs to prove this element by a "clear showing." *City of Angoon v.*
24  *Marsh*, 749 F.2d 1413, 1416 (9th Cir. 1984). Plaintiffs will fail to do so as to Ms.
25  Raymer.

26    Here, Plaintiffs' claims of trademark counterfeiting, trademark infringement,
27  dilution, and unfair competition as to Ms. Raymer must fail. Plaintiffs do not state any
28

1   facts in their complaint to support the claims that Ms. Raymer manufactured, offered
2   for sale, exhibited, imported, distributed, advertised, and sold counterfeit goods
3   bearing Plaintiffs' marks.  Likewise, no facts are stated in Plaintiffs' pleadings to
4   justify the claims of trademark infringement, counterfeiting, copyright infringement,
5   dilution, and purported violations of the Anticybersquatting Consumer Protection Act
6   ("ACPA") by Ms. Raymer.  Instead, Plaintiffs merely posit that "individual
7   Defendants Greg Lorber, Alan Elgort, and Larry Montoya have been the primary
8   moving force behind, and actively engaged in, counterfeiting and infringing activities
9   of Defendants complaint of herein." (Complaint, at ¶ 29).  There is no mention of Ms.
10  Raymer whatsoever.   If Plaintiffs had conducted their due diligence prior to expending
11  judicial resources, they would have known that Ms. Raymer should not have been even
12  named as a defendant in the instant litigation because they would have seen she does
13  not sell any apparel.  The claims against Ms. Raymer are baseless and do nothing to
14  show a likelihood of success on the merits.

15          Further, Plaintiffs' bare allegations that "Defendants' Offending Goods has and
16  is subjecting consumers to confusion" is not applicable to Ms. Raymer who does not
17  sell apparel and never has. (Complaint 11: ¶ 51).

18          Plaintiffs also allege that the PRIMP and LOVE CRUSH trademarks have
19  achieved fame, have "become famous," and "have been and are recognized by the
20  public and the trade as originating from a single source: Primp." (Complaint 7:¶ 23,
21  26; 15:¶ 74).  However, Plaintiffs supply no evidence of "fame."  Indeed, "famous"
22  marks – those capable of dilution – are only those that are "widely recognized by the
23  *general consuming public* of the United Sates as a designation of source of the goods
24  or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A) (emphasis added).  Thus,
25  "famous" marks are those that most consumers would instantly recognize – such as
26  Coca-Cola, McDonalds, Sony, and similar truly ubiquitous marks.  Plaintiffs' marks
27  simply do not rise to this level of "fame" and Plaintiffs fail to provide proof of such
28

1    fame.  Plaintiffs also allege that the PRIMP trademark is "fanciful and arbitrary and is
2    associated in the mind of the public with Primp" and has "acquired secondary
3    meaning" so that it is "immediately associated" as originating from Primp.  (Complaint
4    11: ¶¶ 74-75).  Plaintiffs, however, fail to provide any evidence of secondary meaning,
5    acquired distinctiveness, or strength of their mark.  (*See also*, Complaint 11:¶ 47; 15:¶¶
6    74-75).

7         Further, Ms. Raymer does not sell any goods, so there are no sales of goods to
8    cause Plaintiffs' so-called trademark rights from being diluted.

9         To make matters worse, Plaintiffs' original Sixth and Eighth Claims for state
10   statutory and common law trademark counterfeiting infringement and dilution claims
11   are without merit since, among other reasons, the statutes upon which these claims are
12   based, CA Business and Professions Code Sections 14320, 14340, and 14330, were
13   repealed.[1]

14        In addition, Plaintiffs cannot show that Ms. Raymer acted unfairly, especially
15   since she sold no goods, and therefore cannot establish a likelihood of success re
16   Unfair Competition as to Ms. Raymer.  Accordingly, Plaintiffs cannot show that they
17   are entitled to profits Ms. Raymer purportedly derived from infringement/dilution
18   because -- once again -- Ms. Raymer does not sell any goods.

19        Finally, Plaintiffs' request for a constructive trust is untenable, as against Ms.
20   Raymer, because she receives no income relating to infringing activity.  In any event,
21   imposition of a constructive trust is a remedy, not a claim for relief.

22        Ms. Raymer has been informed by some of the co-defendants that Plaintiffs
23   reportedly amended their complaint, but it has not been served on Ms. Raymer, so she
24   has not had a chance to review it and respectfully requests the Court grant her

25

26

---

27   [1] Ms. Raymer has been informed that Plaintiffs filed an amended complaint, but she has not been served with the pleading
     and has not reviewed it to comment on any of the claims that may have been amended.  Accordingly, Ms. Raymer
28   expressly reserves her arguments on the amended complaint until after she has been properly served, which as of the date
     of this writing she has not.

Case No. CV 11-04444 CAS (JEMx)
**DEFENDANT VL RAYMER'S OPPOSITION TO PLAINTIFFS' OSC RE PRELIMINARY INJUNCTION**

1  additional time to supplement her Opposition and to brief this Court as she becomes

2  aware of additional developments and facts to support her defense.

3      **B.    There is No Irreparable Harm to Plaintiffs**

4         The Supreme Court of the United States has held that "[t]he basis for injunctive

5  relief (preliminary or permanent) in the federal courts has always been irreparable

6  injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456

7  U.S. 305, 312 (1982); *see also Stanley v. University of So. Calif*, 13 F.3d 1313, 1320

8  (9th Cir. 1994).   Accordingly, Plaintiffs must make a "clear showing" that they are

9  entitled to the extraordinary remedy of a preliminary injunction.  There can be no mere

10  "possibility" of irreparable harm. *Winter*, 555 U.S. 7, 129 S. Ct. at 375-76 (2008).   In

11  addition, there must be a demonstration of "immediate threatened harm" for Plaintiffs

12  cannot be compensated with money damages. *See, e.g., Caribbean Marine Services*

13  *Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).   There must be evidence of

14  actual injury; speculative losses are insufficient. See *Goldie's Bookstore, Inc. v.*

15  *Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984) (findings that plaintiff would lose

16  goodwill and "untold" customers held speculative).

17         Further, in the context of trademark infringement cases, the status quo to be

18  preserved by the injunction is the state of affairs that existed prior to the defendant's

19  use of the contested trademark. *See Earth Tech. Corp. v. Envtl. Research & Tech.,*

20  *Inc.*, No. 82-6375 AWT, 1983 U.S. Dist. LEXIS 18316, at *16 (C.D. Cal. Mar. 23,

21  1983).

22         Here, issuance of a Preliminary Injunction would do nothing to preserve the

23  status quo. The prohibition would be to prevent Ms. Raymer from destroying,

24  disposing, altering, or otherwise making unavailable the counterfeit products,

25  promotional and advertising materials, or any other documents, electronic files, and

26  business records, but Plaintiffs fail to allege facts that Ms. Raymer even has possession

27  of any of the counterfeit goods, promotional and advertising materials or other

28

1  documents regarding the manufacture, sale, distribution, advertising or marketing of
2  the alleged counterfeit goods. This is because Ms. Raymer does not sell goods. There
3  is no threat of immediate harm here.

4  Further, Plaintiffs' Application comes too late, so there can be no irreparable
5  harm. As discussed, *supra*, Raymer registered the Domain Name in 1998, years before
6  Plaintiffs' first use of PRIMP, which claims a first use date on the registration of
7  January 1, 2003. Accordingly, Plaintiffs sat on their so-called rights for more than
8  eight years until now and are asking this Court to issue a Preliminary Injunction
9  against Ms. Raymer. Such a substantial delay in taking action evidences there is no
10  urgency here.

11  Indeed, the Court has denied preliminary injunctions to parties who wait as little
12  as eleven months before moving for injunctive relief. *See Playboy Enters. v. Netscape*
13  *Communs. Corp.*, 55 F. Supp. 2d 1070 (C.D. Cal. 1999). Here, it has been over eight
14  years. There is no justification to impose such an extraordinary remedy against Ms.
15  Raymer.

16  There is also no sense of urgency over purported use of the LOVE CRUSH
17  mark since Ms. Raymer never used those marks in a domain name or anywhere else.

18  **C.  If Proven at Trial, Monetary Damages Would Be More**
19       **Appropriate**

20  Plaintiffs' allegations of counterfeiting, trademark and copyright infringement,
21  and unfair competition can be remedied by a damages award if proven at trial. *See Los*
22  *Angeles Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197 (9th Cir. 1980). Indeed,
23  the claims for damages alleged here are monetary and compensable in nature,
24  especially since the issues with Ms. Raymer have to do with the Domain Name and not
25  counterfeiting of goods. Thus, Plaintiffs are unable to show that legal remedies are
26  inadequate for their claims and Plaintiffs' Application should be denied.

27
28

1  **D.    The Balance of Equities Tips Decidedly in Ms. Raymer's Favor**

2        The Court may make the determinative decision to deny injunctive relief based

3  solely on whether the balance of equities tips in defendant's favor, and it must

4  "balance the competing claims of injury and consider the effect on each party of the

5  granting or withholding of the requested relief." *Amoco Production Co. v. Village of*

6  *Gambell, Alaska,* 480 U.S. 531, 542 (1987); *see also Dogloo, Inc. v. Doskocil Mfg.*

7  *Co., Inc.*, 893 F. Supp. 911, 917 (C.D. Cal. 1995).  Likewise, the Court must assess the

8  risk of injury to the defendant if the injunction is granted.  This makes the burden even

9  higher on Plaintiff to show the merits of its case. *See Steakhouse, Inc. v. City of*

10  *Raleigh, N.C.*, 166 F.3d 634, 637 (4th Cir. 1999).   If plaintiff fails to meet its burden

11  on the balance of equities element, the preliminary injunction should be denied. *See*

12  *Winter*, 129 S. Ct. at 376.

13        **1.    Issuance of the Preliminary Injunction Will Seriously**
          **Harm Ms. Raymer**
14

15        Plaintiffs' Application does not explain how Plaintiffs would be harmed if

16  preliminary injunctive relief is not issued.  Without specific details, Ms. Raymer

17  reserves her right to supplement her Opposition.

18        **2.    Any Harm to Plaintiffs Will Be Minimal If Preliminary**
          **Injunctive Relief is Denied**
19

20        Plaintiffs have not articulated how they will be harmed if preliminary injunctive

21  relief is not ordered.  That is because there will be no harm to Plaintiffs if the

22  preliminary injunction is denied as to Ms. Raymer since she is not in the apparel

23  industry.

24        **3.    Plaintiff Comes to this Court with Unclean Hands and the**
          **Delay in Bringing a Preliminary Injunction Evidence that**
25        **Preliminary Injunctive Relief is an Improper Remedy**

26        As discussed, *supra*, Plaintiffs undoubtedly have lumped Ms. Raymer in with

27  other defendants for which she has no common claims or interests.  Indeed, by

28

1  bringing Ms. Raymer into the instant litigation rises to the level of vexatious litigation
2  and Plaintiffs ought to be required to explain to the Court why they would ever allege
3  that Ms. Raymer (a) is an apparel counterfeiter (she is not); and (b) is "related" to the
4  other co-defendants, when in fact she does not know them and has not conducted
5  business with any of them.

6       Plaintiffs have made unsupportable allegations against Ms. Raymer, intimidated
7  and scared her, a lay person, into believing that she had been "served" by e-mail one
8  day before the first OSC Hearing, filed an *ex parte* TRO, and placed the entire case
9  under seal.  Plaintiffs should also be scrutinized for failing to advise Ms. Raymer on
10  June 20, 2011 about the adjourned July 7, 2011 OSC Hearing and the June 23, 2011
11  cut-off date for opposing briefs, which prevented Ms. Raymer, at a minimum, from
12  requesting an extension of time to oppose Plaintiffs' Application, with the intent and
13  knowledge of unfairly keeping such information from Ms. Raymer.  Accordingly, if
14  the Court denies Ms. Raymer's Opposition, in interest of fairness, Ms. Raymer
15  respectfully requests she be given more time to supplement her opposition and to brief
16  this Court as she becomes aware of additional developments and facts to support her
17  defense.

18      **E.**   **Issuance of A Preliminary Injunction is Not in the Public**
19            **Interest**

20       Plaintiffs have not demonstrated how issuance of a preliminary injunction
21  against Raymer would be in the public interest.  Indeed, no public interest will be
22  served by enjoining Ms. Raymer from transferring and/or assigning her assets or
23  forming new entities since she has been wrongfully named in the instant lawsuit.

24      **F.**   **A Seizure Order is an Inappropriate Remedy Since There is**
25            **Nothing to Seize**

26       Pursuant to 15 U.S.C. § 1116(d)(4)(B)(iii), the Court should order a preliminary
27  injunction if:
28

(B)  the court finds that it **clearly** appears from specific facts that -- . . .
(iii) the applicant is likely to succeed in showing that the person against
whom seizure would be ordered used a **counterfeit mark in connection
with the sale, offering for sale, or distribution of goods or services** . . .

15 U.S.C. § 1116(d)(4)(B)(iii) (emphases added).

Here, Ms. Raymer is not in the apparel business nor has she ever been, so it is an impossibility that she ever used a "counterfeit mark."  She does not offer for sale or distribute goods or services.  There is absolutely nothing to seize from Ms. Raymer.

Accordingly, Plaintiffs cannot establish irreparable harm or a balance of the interest tipping in Plaintiffs' favor.

## IV.    CONCLUSION

For the foregoing reasons, Ms. Raymer respectfully requests the Court deny Plaintiffs' Preliminary Injunction.  Alternatively, in the event the Court grants Plaintiffs' Application, Ms. Raymer respectfully requests the Court permit her additional time to supplement her opposition and to brief this Court as she becomes aware of additional developments and facts to support her defense.

Dated:  July 6, 2011                         LEADER GORHAM LLP

By:_____
Gary J. Gorham

PROOF OF SERVICE
1013A(3) CCP

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1990 South Bundy Dr., Suite 390, Los Angeles, CA 90025.

On July 6, 2011, I served the foregoing document described as: **DEFENDANT VL RAYMER'S OPPOSITION TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUCTION AND SEIZURE ORDER; MEMORANDUM OF OINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action:

[X] BY OVERNIGHT: By placing the document(s) listed above in a sealed envelope addressed as set forth below, and causing the envelope to be delivered overnight by Federal Express ON THE FOLLOWING ONLY:

[X] BY E-MAIL: Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses listed above (or on the attached service list). I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful ON THE FOLLOWING ONLY:

| | |
|---|---|
| Scott Shaw, Esq.<br>Debbie Gubernick, Esq.<br>CALL & JENSEN<br>610 Newport Center Drive, Suite 700<br>Newport Beach, CA 92660 | <u>Attorneys for Defendants</u> – **VIA EMAIL**<br>Hautelook, Inc.<br>Telephone: 949-717-3000<br>Facsimile: 949-717-3100<br>Email: sshaw@calljensen.com<br><u>dgubernick@calljensen.com</u> |
| Pacific Apparel, LLC<br>4501 E, 50th Street<br>Vernon, CA 90058<br><br>Joseph Miranda Hoats, Esq.<br>LAW OFFICES OF JOSEPH M. HOATS<br>12672 Limonite Ave., Suite 3E #345<br>Corona, CA 92880 | <u>Defendant</u>- **VIA OVERNIGHT MAIL**<br>Telephone: (323) 585-5281<br>Facsimile: (323) 585-3068<br>Email: <u>glorber@lorberent.com</u><br><br><u>COURTESY COPY</u>- **VIA OVERNIGHT MAIL**<br>Telephone: (31 0) 920-5806<br>Facsimile: (626) 529-0834 |
| Greg Lorber<br>Pacific Apparel, LLC | <u>Defendant</u>- **VIA OVERNIGHT MAIL**<br>Telephone: (323) 585-5281 |

| | |
|---|---|
| 4501 E, 50th Street<br>Vernon, CA 90058 | Facsimile: (323) 585-3068<br>Email: glorber@lorberent.com |
| Andrea Payne<br>Pacific Apparel, LLC<br>4501 E, 50th Street<br>Vernon, CA 90058 | Defendant- **VIA OVERNIGHT MAIL**<br>Telephone: (323) 585-5281<br>Facsimile: (323) 585-3068<br>Email: apayne@lorberent.com |
| Wendy Clare Freedman, Esq.<br>CLARE PAULIN LLP<br>9663 Santa Monica Blvd., Suite 368<br>Beverly Hills, CA 90210 | Attorney for Plaintiffs Industry Concept<br>Holdings, Inc. and Primp, Inc. – **VIA**<br>**PERSONAL DELIVERY**<br>Telephone: 310-777-7590<br>Facsimile: 310-777-8831<br>E-mail:<br>wendyfreedman@ca.rr.com |

[X] BY PERSONAL SERVICE: by placing_ the original X a true copy thereof enclosed in sealed envelopes addressed as set forth below (or as addressed on the attached mailing_ list) and _gave it to a professional messenger service for service ON THE FOLLOWING ONLY:

**Judge's copy- via Hand Delivery**

U. S. District Court
Chambers of Judge Cristina A. Snyder
312 North Spring Street, Courtroom 5
Los Angeles, CA 90012

Wendy Clare Freedman, Esq.
CLARE PAULIN LLP
9663 Santa Monica Blvd., Suite 368
Beverly Hills, CA 90210

[X] I declare that I am employed in the office of a member of the Bar of, or permitted to practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 6, 2011

Thao Vu

**PROOF OF SERVICE**