Jon M. Leader (SBN: 147059)
jleader@lglaw.la
Gary J. Gorham (SBN: 171061)
ggorham@lglaw.la
**LEADER GORHAM LLP**
1990 South Bundy Drive, Suite 390
Los Angeles, CA 90025
Telephone:  (310) 696-3300
Telecopy:    (310) 696-3305

Karen J. Bernstein (*Pro Hac Vice*)
kjb@karenbernsteinlaw.com
**LAW OFFICES OF KAREN J. BERNSTEIN, LLC**
100 Park Avenue, Suite 1600
New York, New York  10017
Telephone: (212) 339-9955
Telecopy:  (212) 339-0046

Attorneys for Defendant VL RAYMER

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| INDUSTRY CONCEPT HOLDINGS, INC., a Colorado corporation and PRIMP, INC., a Colorado corporation,<br><br>        Plaintiffs,<br><br>        vs.<br><br>ALAN ELGORT, an individual, GREG LORBER, an individual, LARRY MONTOYA, an individual, ANDREA PAYNE, an individual, FANNY GARCIA, an individual, PACIFIC APPAREL, LLC, a Nevada corporation, JULIE SAENZ, an individual, HAUTELOOK, a California corporation, MARQUETTE COMMERCIAL FINANCE, a Texas corporation, VL RAYMER, an individual, and DOES 1 through 10,<br><br>        Defendants. | Case No.:  CV 11-04444 CAS (JEMx)<br><br>**DEFENDANT VL RAYMER'S NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR FORMER COUNSEL WENDY C. FREEDMAN**<br><br>**[Supporting Declarations of Jon M. Leader and VL Raymer filed concurrently]**<br><br>Date:  October 24, 2011<br>Time:  10:00 a.m.<br>Place:  Courtroom 5,<br>          312 N. Spring Street |
| AND RELATED COUNTER-COMPLAINT. | |

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 24, 2011, at 10:00 a.m. in Courtroom 5 of this Court, 312 N. Spring Street, Los Angeles, CA 90012, before the Honorable Christina A. Snyder, defendant VL Raymer will move the Court for an Order granting sanctions in the total amount of $96,333.59 against Plaintiffs (including their principals and controlling entities Craig Edelman and Edwards Investments) and their former counsel Wendy C. Freedman, jointly and severally.

This motion is made following conferences of counsel pursuant to L.R. 7-3 which took place on August 24, 2011 with counsel for Plaintiffs and September 15 and 16, 2011 with counsel for Ms. Freedman.

Defendant Raymer's Motion for Sanctions is based on this Memorandum of Points and Authorities, the Court's Orders in these proceedings, all the papers and pleadings filed by Ms. Raymer and other parties to this proceeding, the Declaration of Jon M. Leader, the Declaration of VL Raymer, and the argument and testimony presented at hearings on June 8, July 7, August 1, and August 9, 2011, all facts of which the Court may take judicial notice, and such further evidence and argument as the Court may consider at any hearing on Ms. Raymer's Motion.


DATED:  September 26, 2011          LEADER GORHAM LLP


                                   By: /s/Jon M. Leader
                                       Jon M. Leader

                                   LAW OFFICES OF KAREN J.
                                   BERNSTEIN, LLC


                                   By: /s/Karen J. Bernstein
                                       Karen J. Bernstein (*Pro Hac Vice*)

                                   Attorneys for Defendant VL RAYMER

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................6

II. FACTS ...............................................................................................................7

    A.  Pre-Litigation Activity ...........................................................................7

    B.  The Temporary Restraining Order and Complaint ................................8

    C.  The TRO and Complaint are "Served" on Ms. Raymer.......................11

    D.  The June 8, 2011 OSC Hearing...........................................................11

    E.  The First Amended Complaint .............................................................12

    F.  Telephone Call Between Ms. Bernstein and Ms. Freedman Prior to the July 7 Continued OSC Hearing...........................................................................12

    G.  The July 7 Continued OSC re Preliminary Injunction .......................13

    H.  Plaintiffs' Last Minute Attempt to Withdraw the Preliminary Injunction Motion Against Ms. Raymer...........................................................................14

    I.  Ms. Freedman Changes Law Firms.....................................................15

    J.  Preliminary Injunction Denied; Inadmissible Exhibit Stricken ...........15

    K.  Ms. Freedman Applies to Withdraw as Counsel.................................15

    L.  Hallstrom Firm Substituted as Plaintiffs' Counsel; FAC Dismissed against Ms. Raymer ..............................................................................................16

    M.  Ms. Raymer Answers and Counter-Complains....................................16

    N.  Attempts to Settle the Sanctions Issue Without Court Intervention.....................17

III. ARGUMENT ...................................................................................................17

    A.  Sanctions Against Plaintiffs and Ms. Freedman ................................17

        1.  28 U.S.C. § 1927: Attorney Sanctions .....................................17

        2.  Central District Local Rule 83-7: Attorney and/or Client Sanctions ........17

        3.  The Court's Inherent Power: Attorney and/or Client Sanctions ..............18

    B.  Ms. Freedman and Plaintiffs Should Be Sanctioned For Bad Faith Tactics and Vexatious Litigation Against Ms. Raymer.........................................................18

        1.  Ms. Freedman...............................................................................18

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

2.     Mr. Edelman ........................................................................... 18

3.     Ms. Butler ............................................................................... 20

C.     Motion to Dismiss ......................................................................... 20

D.     Monetary Sanctions ...................................................................... 21

1.     Ms. Freedman ......................................................................... 21

2.     Plaintiffs .................................................................................. 22

3.     Plaintiffs and Ms. Freedman ................................................ 22

IV.     CONCLUSION ................................................................................. 22

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

# TABLE OF AUTHORITIES

Page(s)

CASES

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) ............................................................................ 18

*New Alaska Dev. Corp. v. Guetschow,*
    869 F.2d 1298 (9th Cir. 1989) .......................................................... 17

*Salstrom v. Citicorp Credit Svcs., Inc.,*
    74 F.3d 183 (9th Cir. 1996), *cert. denied*, 519 U.S. 813 (1996) ............ 17

STATUTES

15 U.S.C. § 1125 ..................................................................................... 7

15 U.S.C. § 1125(c) ("ACPA") ........................................................... 9,12

ICANN Policy 4(a)(i) .......................................................................... 7, 8

Fed. R. Evid. 408 .................................................................................. 15

Fed. R. Civ. P. 41(a)(2) ................................................................... 16, 20

28 U.S.C. § 1927 ............................................................................. 17, 21

OTHER AUTHORITIES

Local Rule 7-3 ................................................................................. 14, 17

Local Rule 83-2.10.1 ............................................................................ 16

Local Rule 7.1-1 ................................................................................... 20

Local Rule 83-7 .............................................................................. 17, 22

*Moore's Federal Practice*, § 54.171[4][b], 3d .................................... 20

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Ms. Raymer should never have been named in this lawsuit.  Unlike the other defendants, Ms. Raymer is an unwitting victim in these proceedings.  There is no doubt Plaintiffs and Ms. Freedman conspired to conjure up an excuse to join Ms. Raymer with the apparel defendants so they could fraudulently obtain transfer of her Primp.com domain name to them.  They thought by bullying, harassing, scaring, and outspending Ms. Raymer, and by falsely accusing her of being an apparel counterfeiter, this plan would succeed.  It didn't.

Plaintiffs themselves were abundantly aware of the events in this litigation and actively involved -- attending hearings and making sworn declarations.  They cannot hide behind Ms. Freedman and are equally culpable for the unwarranted litigation against Ms. Raymer.

Plaintiffs' and Ms. Freedman's misrepresentations, concealment of documents, suppression of evidence, and multiplication of these proceedings is legion.  There is no excuse for what they did and they appear to have no remorse for their failed attempts to obtain Primp.com and extort money from Ms. Raymer.  Having never been in the apparel industry, Ms. Raymer has been forced to expend almost $100,000 in legal expenses to defend her professional reputation and because Plaintiffs told her that her computers and bank accounts would be seized.  It would simply be an injustice not to grant sanctions against Plaintiffs and Ms. Freedman for the nightmare that this case has become for Ms. Raymer.

For the Court's convenience, attached as Exhibits A and B are charts showing the chronology of the case and summarizing the material omissions, misrepresentations, and concealments made by Plaintiffs and Ms. Freedman.

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

## II.    FACTS[1]

### A.    Pre-Litigation Activity

On April 26, 2011, Ms. Freedman e-mailed an April 23, 2011 letter to Ms. Raymer demanding she cease and desist using the Primp.com domain name and transfer it to Plaintiffs.  A copy of the letter was also sent via Certified Mail and received by Ms. Raymer at her P.O. Box in Gilroy, California.  Ms. Freedman's April 23 letter did not mention the LOVE CRUSH mark, any copyright violations, or any allegations of apparel counterfeiting to put Ms. Raymer on notice of Plaintiffs' purported superior trademark rights and copyrights.  Ms. Freedman unreasonably gave Ms. Raymer only three days to respond to the letter.  Ms. Raymer's former attorney responded to Ms. Freedman that Ms. Raymer could not have been aware of the PRIMP trademark when she registered the Domain Name in 1998 as Plaintiffs' use of the trade name and trademark for PRIMP did not begin until at least five years later, so she could not have registered her Domain Name in bad faith.  *See* Decl. of Raymer in Opp. to Pltfs' Application for TRO ("TRO App"), ¶ 4, Exh. A (Dkt No. 63) ("Raymer Decl.").  This is because both ICANN Policy and Lanham Act, 15 U.S.C. § 1125(c) ("ACPA") require that the trademark being asserted must have been first used and/or acquired distinctiveness *before the domain name was registered*.  *See* ICANN Policy 4(a)(i); 15 U.S.C. § 1125 (must prove "(I) in the case of a mark *that is distinctive at the time of registration of the domain name*, is identical or confusingly similar to that" of the trademark being asserted).

A reasonably prudent trademark practitioner would have known to access the Whois historical database for Primp.com *before* sending the cease and desist letter to Ms. Raymer and seen that Ms. Raymer has been the named registrant of the domain name for at least five years before the PRIMP trademark purportedly was

---

[1] For a more complete statement of the relevant facts, please see VL Raymer's Opposition to OSC re Preliminary Injunction (Dkt Nos. 62-66) and Memoranda in Opposition to TRO, *Ex Parte* App for OSC re Preliminary Injunction and Request for Sanctions (Dkt Nos. 104, 113, 115).

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

1  first used.[2]  *See* Raymer Decl., ¶ 4, Exh. A.  Ms. Raymer's former attorney's

2  response letter should have ended any prospect of litigation with Ms. Raymer, but

3  Plaintiffs and Ms. Freedman pressed on anyway and alleged in the Complaint and

4  First Amended Complaint ("FAC") that the Primp trademark was "distinctive at the

5  time the infringing domain name[] . . . primp.com w[as] registered, and was, and is

6  protected by" Lanham Act, 15 U.S.C. § 1125(c).  *See* FAC, at ¶ 132 (Dkt No. 39).

7       If Ms. Freedman is to be believed -- she testifies in sworn declarations in

8  support of the TRO and Motion to Seal [at ¶ 4 (Dkt No. 2) and at ¶ 3 (Dkt No.7)]

9  that she is an expert on "counterfeiting of trademarks in many districts on behalf of

10 trademark owners" -- then she would have known simply by viewing the site located

11 at Primp.com that Ms. Raymer was not selling goods and was not an apparel

12 counterfeiter.  Indeed, as discussed below, the June 2, 2011 Court-ordered seizure of

13 items from the Pacific Apparel Defendants would also have revealed that Ms.

14 Raymer is not associated with co-defendants and is not an apparel counterfeiter, but

15 Ms. Freedman and Plaintiffs concealed those material facts from the Court.

### B.    The Temporary Restraining Order and Complaint

17       On May 25, 2011, one week after Ms. Raymer's former attorneys responded

18 to Ms. Freedman's cease and desist letter, Ms. Freedman signed and filed for

19 Plaintiffs the TRO, Seizure Order and Order to Show Cause, with several sworn

20 declarations signed by several of Plaintiffs' executives.  Along with the TRO, Ms.

21 Freedman signed and filed on Plaintiffs' behalf a Complaint against Ms. Raymer

22 alleging ten claims for relief: (1) federal trademark counterfeiting, (2) federal

23 trademark infringement, (3) federal unfair competition, (4) federal trademark

24 dilution, (5) federal copyright infringement, (6) state statutory common law

25 trademark counterfeiting, (7) state statutory unfair competition, (8) state statutory

26

27 [2] Whois is "a query and response protocol that is widely used for querying databases that store the registered users or
   assignees of an Internet resource, such as a domain name."  http://en.wikipedia.org/wiki/Whois (last visited 9/21/11).
28 There are also professional tools like Domaintools.com, which for a nominal subscription display every registrant of
   the domain, which may date back to 2000 but not always.  The Whois historical records for Primp.com only go back
   to 2005.  *See* Raymer Decl. at ¶4 & Exh. A (evidencing Primp.com had been registered to Ms. Raymer since 1998).

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

trademark dilution, (9) violations of ACPA, and (10) imposition of a constructive trust, all of which falsely claim she was part of an apparel counterfeiting conspiracy, violated Plaintiffs' so-called copyrights, both the PRIMP and LOVE CRUSH trademarks, and was a cyber squatter by virtue of her registration of the domain name Primp.com.  All of the papers were filed under seal so no one could see them.

In the TRO, Plaintiffs asserted Ms. Raymer was an apparel counterfeiter but without including a shred of evidence in their moving papers.  There is only a single passing reference to Ms. Raymer in all of the papers filed by Ms. Freedman on behalf of Plaintiffs in their numerous *ex parte* applications, motions, requests for a TRO, and for preliminary injunction.  This single reference is in the TRO App, at page 10, lines 6-11 (Dkt No. 5) and falsely states:

> VL Raymer registered primp.com to facilitate the counterfeiting of the Primp clothing. Upon information and belief, Fanny Garcia, Julie Saenz and VL Raymer manufactured and distributed, advertised, offered for sale, and/or sold counterfeit Primp clothing bearing the Primp and Love Crush marks. Neither Garcia, Saenz nor VL Raymer has ever been a Primp clothing licensee. (Milonas Decl" ISO Plaintiffs' *Ex Parte* Application ("Milonas Decl."), Paragraph 11).

There is no evidentiary basis whatsoever for this allegation as the Milonas Declaration (Dkt No. 8) does not mention Ms. Raymer at its paragraph 11 or elsewhere.  Ms. Freedman knew this and so did Plaintiffs and Mr. Milonas (President of Industry Concept Holdings).  It was an impossibility that Ms. Raymer "registered Primp.com to facilitate the counterfeiting of the Primp clothing" since she registered the domain name in 1998, five years before Plaintiffs' purported first use date of the mark.

The TRO App also falsely states that "Primp does not sell its high-end goods through licensees or franchisees . . . ."  TRO App, at 4:11 (Dkt No. 5).  This material false statement is repeated in the Complaint and the FAC.  *See* Complaint, at 6:24; FAC, at 8:24.  These statements are belied by Ms. Freedman's representation to the

9

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

1    Court at the July 7, 2011 OSC that one of ICH's 8K quarterly report showed "[t]here

2    were licensing agreement [*sic*] one in Japan and there was a second agreement."

3    Transcript of July 7, 2011 OSC ("Transcript"), at 7:8-10.

4         Ms. Freedman's drafting of the Complaint and FAC characterizing the Primp

5    mark as "famous" for dilution purposes was a total and complete fiction and is

6    legally incorrect.  Specifically, no sales records were produced, no expense sheets or

7    tax returns were presented to prove that the less than four-year old federally

8    registered PRIMP trademark acquired distinctiveness or secondary meaning.   All

9    that was submitted was an empty declaration of Mr. Milonas, which falsely states

10   ICH is a publicly held company (as will be explained below) and purported to claim

11   the company spent "millions of dollars on advertising its goods and services bearing

12   the Primp and Love Crush marks and that Primp does not license its goods."  These

13   statements are false and Plaintiffs and Ms. Freedman knew this.  *See* Milonas Decl,

14   at ¶ 3, 11 (Dkt No. 8).

15        Ms. Freedman, as a trademark professional, knew or should have known there

16   was no legal basis to allege the PRIMP trademark was "famous" within the meaning

17   of 15 U.S.C. § 1125(c).[3]  Also, Ms. Freedman and Plaintiffs knew the Primp mark

18   exists in a crowded field of marks and is not a distinctive mark or capable of

19   acquiring secondary meaning, which requires substantial evidence, none of which is

20   presented in the Milonas Declaration.  Indeed, Plaintiffs were well aware of this fact

21   as Primp, LLC (the then holder of the Primp trademark registration) was involved in

22   a Trademark Trial and Appeal Board Cancellation Proceeding over the Primp mark

---

[3] The Federal Trademark Dilution Act defines a "famous" mark as follows:

    **(2) Definitions**
    (A) For purposes of paragraph (1), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:
    (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
    (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
    (iii) The extent of actual recognition of the mark.
    (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

1  with Primp Make Up Lounge, so they were well aware of competitive uses of the

2  name "Primp."

3          As explained in Mr. Leader's Declaration in Support of Ms. Raymer's

4  Opposition to Preliminary Injunction [at ¶¶ 2 - 5 (Dkt No. 62)], Plaintiff's trademark

5  "is only one of many 'Primp' businesses in a crowded marketplace."  Further, the

6  fact that Ms. Freedman and Plaintiffs did not assert any claims against the domain

7  registrant of Primp.net, which features pay per click ads for women's clothing,

8  emphasizes precisely why Ms. Raymer is singled out.  Simply put, she had a good

9  domain name with the top level domain extension ".com" and Plaintiffs wanted it.

10 The Primp.net domain name would have been a much easier target, especially since

11 the domain name had been registered years *after* the purported first use date of the

12 Primp mark.

13         **C.      The TRO and Complaint are "Served" on Ms. Raymer**

14         Plaintiffs' and Ms. Freedman's malicious behavior continued on June 7, 2011,

15 five days after the cut-off date for defendants to oppose Plaintiffs' Motion for the

16 Preliminary Injunction, when Ms. Freedman sent another e-mail to Ms. Raymer,

17 attaching the Complaint and the TRO /Seizure Order and with the specific intent to

18 scare Ms. Raymer stating that she had been "served," which was factually and

19 legally incorrect.  *See* concurrently filed Declaration of VL Raymer in Support of

20 Motion for Sanctions, at ¶¶ 5-7.

21         Ms. Freedman succeeded in frightening Ms. Raymer for her family's safety.

22 After reviewing the TRO and Seizure Order, Ms. Raymer could not sleep at night

23 and suffered psychological and emotional distress, believing that U.S. Marshalls

24 would come to her home and beat down the door in the middle of the night.  She

25 thought the TRO restrained her from accessing her bank accounts or conducting her

26 day-to-day business.  *See* Raymer Decl., *Id.,* ¶ 7.

27         **D.      The June 8, 2011 OSC Hearing**

28         The Court set a June 8, 2011 OSC hearing.  Several defendants were unable

to oppose the preliminary injunction motion as the entire case had been sealed and no one could access the necessary filings.  Accordingly, the Court continued the hearing to July 7 and unsealed the case file.  However, Plaintiffs and Ms. Freedman should have informed the Court at the June 8 hearing that they were withdrawing the TRO against Ms. Raymer since there was nothing uncovered during the June 2 seizure to connect her with the Pacific Apparel Defendants.  That was not the case.

### E.      The First Amended Complaint

Ms. Bernstein (counsel for Ms. Raymer) spoke with Ms. Freedman on June 20, although she had not yet been formally retained to represent Ms. Raymer in this matter.  Exactly a week after Ms. Bernstein and Ms. Freedman spoke, and ten days before the July 7 continued OSC hearing, Plaintiffs filed their FAC.  The "Parties" section no longer specifically named Ms. Raymer or described her purported infringing activities to put her on notice of the allegations against her.  Further, the FAC no longer contained federal trademark counterfeiting, trademark infringement, or copyright infringement claims against Ms. Raymer but still maintained the remaining claims for relief, including the ACPA claim.

At that point, Ms. Freedman and Plaintiffs admitted Ms. Raymer was not an apparel counterfeiter and should have brought this to the Court's and Ms. Raymer's attention since the seizure did not produce any evidence of Ms. Raymer's association with co-defendants, but they pressed on anyway.

### F.      Telephone Call Between Ms. Bernstein and Ms. Freedman Prior to the July 7 Continued OSC Hearing

Before the July 7 OSC and after Ms. Raymer retained Ms. Bernstein and Leader Gorham LLP, Ms. Bernstein called Ms. Freedman to say she was authorized to accept service of the Complaint.  Ms. Freedman told Ms. Bernstein that she would deliver the Complaint at the hearing, which was untrue and never happened.  Ms. Bernstein also asked Ms. Freedman and Plaintiffs: (1) if they would stipulate to Ms. Raymer filing a preliminary injunction opposition (this request was refused); (2)

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

what they sought to restrain Ms. Raymer from doing if an injunction issued; and (3) to cease their campaign to bring Ms. Raymer into the litigation as Ms. Raymer is not an apparel counterfeiter and it would only lead to sanctions against her and her client.  Before hanging up the phone on Ms. Bernstein, Ms. Freedman stated that Plaintiffs' goal in obtaining a preliminary injunction was to prohibit Mr. Raymer from using the Primp.com domain name, but nowhere in Plaintiffs' papers is the domain name mentioned or this relief requested.  *See* Bernstein Decl. in Support of Preliminary Injunction Opposition, at ¶¶ 9-11 (Dkt No. 65).

### G.    The July 7 Continued OSC re Preliminary Injunction

At the July 7, 2011 OSC, Ms. Freedman knowingly made false and misleading statements.  Specifically, Ms. Freedman stated that ICH and Primp are publicly held companies.  *See* Transcript, at 6:22-25.  According to SEC records, ICH was publicly held at one time, but was delisted from the Penny Stock Exchange on April 18, 2011 for delinquency in submitting required financial disclosures.  *See* concurrently filed Declaration of Jon M. Leader ("Leader Decl."), ¶ 3, Exh. 1.  The TRO App signed by Ms. Freedman, which post-dates the April 18, 2011 delisting, falsely states Plaintiffs are "publicly held."  *See* TRO App, at 2:19-20 (Dkt No. 5).

The Court dissolved the TRO at the July 7 hearing.  Not once during the hearing did Ms. Freedman disclose to the Court that the Preliminary Injunction was not applicable to Ms. Raymer because the FAC had withdrawn the federal trademark counterfeiting claim for relief against her or that there was no evidence uncovered during the June 2, 2011 seizure of the Pacific Apparel Defendants to connect Ms. Raymer to them.  Craig Edelman of Edwards Investments, LLC was also present at the hearing as an observer.  Leader Decl., ¶ 5.  The Court continued the motion hearing to August 1 and ordered a briefing schedule, with the parties to file additional materials by July 21 (Plaintiffs) and July 28 (Defendants).  *See* Order (Dkt No. 59).

**H.      Plaintiffs' Last Minute Attempt to Withdraw the Preliminary Injunction Motion Against Ms. Raymer**

On July 21, 2011, Plaintiffs filed several declarations in support of their Motion but *none* were directed to Ms. Raymer.  Accordingly, Ms. Raymer's counsel wrote to Ms. Freedman on July 22 and asked whether Plaintiffs were maintaining a preliminary injunction request against Ms. Raymer.  This letter also pointed out the deficiencies in Plaintiffs' Motion and prior application, the lack of any evidence concerning Ms. Raymer, and requested the Motion be withdrawn as to Ms. Raymer. To avoid the expense of filing a supplemental opposition, counsel for Ms. Raymer asked for a response by the close of business on Monday, July 25.  *See* Leader Decl. ISO Raymer Supp'l Opp to Preliminary Injunction, at ¶ 2-4, Exh. 1(Dkt No. 113).

Ms. Freedman did not timely respond and Ms. Raymer was required to have her attorneys prepare the Supplemental Opposition.  However, after business hours on July 27, two days after she was to have responded to Ms. Raymer's counsel's letter and in contravention of L.R. 7-3, Ms. Freedman left a voicemail and sent an email offering to withdraw the Preliminary Injunction Motion as to Ms. Raymer and provided a draft Stipulation without any explanation for the delay in responding or the reasons for withdrawing the Preliminary Injunction.  Indeed, Ms. Raymer did not have the opportunity to respond before Ms. Freedman filed an Application to withdraw Plaintiffs' Motion for Preliminary Injunction.

Plaintiffs and Ms. Freedman knew the FAC no longer alleged federal trademark counterfeiting against Ms. Raymer, but continued with suppressing this information at the August 1, 2011 OSC hearing causing Ms. Raymer to needlessly spend thousands of dollars in attorneys' fees to oppose the Preliminary Injunction, not just once (when Ms. Raymer opposed the TRO App at the July 7 OSC hearing) but twice when a Supplemental Opposition was filed for the August 1 hearing.  At a minimum, Ms. Freedman and Plaintiffs were under an affirmative duty to inform the Court that the Preliminary Injunction Motion no longer alleged federal trademark

counterfeiting claims against Ms. Raymer and did not apply to her.  Instead, they continued their campaign of intimidation and pressure on Ms. Raymer to unnecessarily expend legal fees, to needlessly oppose the Motion for Preliminary Injunction twice, and to waste judicial resources.

## I.     Ms. Freedman Changes Law Firms

On July 31, 2011, Ms. Freedman executed a Notice of Change of Law Firm and Address from Clare Paulin, LLP[4] to Kleinberg & Lerner, LLP.  This document was filed on August 1, 2011, the day of the continued Preliminary Injunction hearing.  *See* Notice of Change of Firm Name and Address (Dkt No. 121).  An attorney from the Kleinberg & Lerner firm was present at the hearing as an observer.  Mr. Edelman was also present at the hearing.  See Leader Decl. at ¶ 6.

## J.     Preliminary Injunction Denied; Inadmissible Exhibit Stricken

On August 1, a day after Ms. Freedman's notice of firm change and address, the Court denied the Preliminary Injunction and granted Ms. Raymer and others an extension of time to respond to the FAC.  The Court also issued a Minute Order denying Plaintiffs' Application to Withdraw the Preliminary Injunction against Ms. Raymer and striking an inadmissible exhibit Ms. Freedman knowingly and improperly included as Exhibit 5 to Plaintiffs' Motion for Preliminary Injunction. This exhibit was an offer of settlement in accordance with Fed. R. Evid. 408 and was filed in another improper attempt to cast aspersions on Ms. Raymer.  Any reasonably prudent attorney would know such a document was clearly inadmissible.

## K.     Ms. Freedman Applies to Withdraw as Counsel

On August 3, two days after the August 1 hearing denying Plaintiffs' Preliminary Injunction, Ms. Freedman applied *ex parte* to withdraw as counsel citing "irreconcilable differences" with her alleged sole client Wells Butler (a non-party) as the reason for her withdrawal.  *See* Ex Parte Application to Withdraw as Counsel of Record with Substitution of Counsel by Hallstrom, Klein & Ward (Dkt

---

[4] A review of the Secretary of State websites for California, Nevada, and Delaware reveals no filing for a Clare Paulin LLP.

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

No. 124).  All pleadings and motion papers represented that Ms. Freedman was the attorney of record for Plaintiffs.  Not once did Ms. Freedman inform the Court that she represented only Ms. Butler.  If that was the case, then Plaintiffs violated L.R. 83-2.10.1 which mandates that corporations must be represented by counsel. Further, if Ms. Freedman was NOT the attorney for the plaintiff corporations, she should have disclosed this material fact to the Court but she did not.

### L.    Hallstrom Firm Substituted as Plaintiffs' Counsel; FAC Dismissed against Ms. Raymer

On August 8, 2011, the evening before the August 9 hearing, the Hallstrom Firm filed a substitution of attorney for Plaintiffs which appears to be signed by Craig Edelman, and not Mr. Milonas.  *See* Dkt No. 133.  Ms. Freedman also signed and filed a Notice of Non-Appearance using her former firm name and address, misrepresenting her status to shield the Kleinberg & Lerner firm, despite her notice to the Court and the parties that she changed her firm and address.  *See* Dkt No. 132.

The Hallstrom Firm also filed a Motion to Dismiss Ms. Raymer, pursuant to Fed. R. Civ. P. 41(a)(2), before the Court permitted them to be substituted in as Plaintiffs' new counsel.  In an August 9 Minute Order, the Court granted Ms. Freedman's withdrawal as counsel while retaining jurisdiction for the sanctions issues and substituted the Hallstrom Firm as Plaintiffs' counsel.  The Minute Order also extended the deadline to file sanctions motions to September 26, 2011.

### M.    Ms. Raymer Answers and Counter-Complains

On August 9, Ms. Raymer filed her Answer to the FAC and two days later amended her Answer to add a Counter-Complaint against Plaintiffs.  On August 19, without an opportunity for Ms. Raymer to oppose Plaintiffs' Rule 41(a)(2) Motion to Dismiss her from the action, the Court granted the dismissal without prejudice and *sua sponte* dismissed Ms. Raymer's Amended Answer and Counter-Complaint without prejudice.  *See* Dkt No. 156.  The Court retained jurisdiction over the sanctions issue as to Plaintiffs.

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

### N.    Attempts to Settle the Sanctions Issue Without Court Intervention

In good faith efforts to settle the sanctions issue and pursuant to L.R. 7-3, Ms. Raymer's counsel held a telephonic discussion with: (a) Plaintiffs' counsel, Betty Levine and Grant Hallstrom, on August 24, 2011, and (b) Ms. Freedman's counsel David Parker, on September 15 and 16, 2011.  Email and other communications were exchanged among counsel in further attempts to reach a settlement.  These settlement and resolution meet and confers were unsuccessful, necessitating the filing of this motion.  See Leader Decl. at ¶ 7.

## III.   <u>ARGUMENT</u>

### A.    Sanctions Against Plaintiffs and Ms. Freedman

#### 1.    <u>28 U.S.C. § 1927: Attorney Sanctions</u>

28 U.S.C. § 1927 authorizes sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously."  Indeed, "subjective bad faith is sufficient" for attorney sanctions in the 9th Circuit; that is, has knowingly or recklessly raised a frivolous or meritless argument solely to harass the opposing party.  *Salstrom v. Citicorp Credit Svcs., Inc.*, 74 F.3d 183, 184 (9th Cir. 1996) (citation omitted), *cert. denied*, 519 U.S. 813 (1996).   Indeed, even if an attorney's arguments are meritorious, her conduct may be sanctionable if in bad faith.  *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989).  Thus, if § 1927 violations are found, an attorney may be ordered to pay the excess costs and expenses, as well as the opposing party's attorneys' fees resulting from her conduct.

#### 2.    <u>Central District Local Rule 83-7: Attorney and/or Client Sanctions</u>

Local Rule 83-7 states:
The violation of or failure to conform to any of these Local Rules may subject the offending party or counsel to:
(a) monetary sanctions, if the Court finds that the conduct was willful, grossly negligent, or reckless;
(b) the imposition of costs and attorneys' fees to opposing counsel, if the Court finds that the conduct rises to the level of bad faith and/or a

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

willful disobedience of a court order; and/or

(c) for any of the conduct specified in (a) and (b) above, such other sanctions as the Court may deem appropriate under the circumstances.

### 3.   The Court's Inherent Power: Attorney and/or Client Sanctions

The Court has the inherent power to order sanctions for myriad reasons such as assessing attorneys' fees for bad faith conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991). This includes situations where an attorney or party knowingly or recklessly raises frivolous arguments, abuses the judicial process, or acts vexatiously to harass an opponent, or other conduct of the litigation.

### B.   Ms. Freedman and Plaintiffs Should Be Sanctioned For Bad Faith Tactics and Vexatious Litigation Against Ms. Raymer

The record clearly demonstrates that Plaintiffs and Ms. Freedman engaged in a pattern of bad faith litigation conduct, pursuing a meritless case for the sole purpose of gaining transfer of the Primp.com domain name, which directly resulted in Ms. Raymer paying substantial attorneys' fees and costs in her defense.

Mr. Milonas and Ms. Butler submitted two sworn declarations in support of the TRO/Preliminary Injunction Motion and Mr. Edelman swore three declarations among other filings. Plaintiffs cannot claim ignorance of the facts of this case.

### 1.   Ms. Freedman

Ms. Freedman's veracity should be questioned as, among other things, she misrepresented to the Court she was counsel of record for Plaintiffs and then later revealed she was purportedly representing only Ms. Butler. She acted recklessly throughout this litigation and perpetuated a fraud upon this Court by withholding material information concerning her clients and the allegations against Ms. Raymer.

### 2.   Mr. Edelman

Mr. Edelman, who attended at least two hearings before this Court, swore three different declarations in support of various motions on behalf of Plaintiffs describing himself as "an employee of Edwards Investments, LLC" when in fact he

1   is the majority shareholder of Primp, Inc.  He is described by Plaintiffs and Ms.
2   Freedman as the owner or controlling person of Plaintiffs.  *See* Leader Decl., ¶ 8.
3   He could have disclosed his pecuniary interest with Plaintiffs in the Declaration he
4   signed in Support of Plaintiffs' Ex Parte App to Stay Enforcement of Order Dated
5   July 7, 2011 [¶ 3 (Dkt No. 94)] wherein he attached a Colorado State Court order
6   granting Edwards Investments, LLC all the shares of Primp, Inc. and the PRIMP
7   trademark.  *See id.*, Exh. 1.

8       He never disclosed this material fact in any of the three declarations that were
9   filed.  He swore under oath that Edwards Investment, LLC was the "investment
10  banker for Industry Concept Holdings, Inc./YourWay Holding Corp."  *See* Edelman
11  Decls., Dkt Nos. 89, 94 & 142.  Mr. Edwards swears Edwards Investments, LLC "is
12  a privately held investment banking firm that provides a broad range of financial
13  advisory services including sale and restructuring services, and specializes in
14  helping middle companies complete challenging financial transactions."  *See*
15  Declaration of Edelman ISO Plaintiffs' Mtn. for Preliminary Injunction (Dkt No. 89,
16  at § 4).  An investment bank ordinarily "assists individuals, corporations and
17  governments in raising capital by underwriting and/or acting as the client's agent in
18  the issuance of securities.  [It] may also assist companies involved in mergers and
19  acquisitions . . .  Indeed, an investment banker must be a licensed broker-dealer and
20  subject to [SEC] and Financial Industry Regulatory Authority (FINRA) regulation."
21  *See* http://en.wikipedia.org/wiki/Investment_banker (last visited Sept. 21, 2011).
22  This description appears to be precisely what Edwards Investments, LLC and Mr.
23  Edelman do for a living.[5]

24      Mr. Edelman's lack of candor is typical of his past.  Indeed, SEC records
25  reveal that in 1999, Mr. Edelman's SEC license was suspended and he was fined for
26  failing to disclose his felony menacing conviction to the SEC, which casts doubt on
27  the veracity of his declarations.  *See* Leader Decl., ¶ 4, Exh. 2.

28

---

[5] Curiously, there appear to be no SEC records of Mr. Edelman or Edwards Investments licensed to provide financial advice or to sell securities in Colorado or Nevada.

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

1          3.   <u>Ms. Butler</u>

2          Ms. Butler worked in the same warehouse as Mr. Lorber and the Pacific

3  Apparel Defendants for years in Vernon, CA and there was not at that time, or any

4  other time, any evidence they were working with Ms. Raymer in a counterfeiting

5  conspiracy, yet as President of Primp she tacitly agreed to let Ms. Freedman to do

6  whatever it took to steal the Primp.com domain name away from Ms. Raymer.

7          Pursuant to Local Rule 7.1-1, Ms. Freedman and Plaintiffs had a continuing

8  obligation to disclose to the Court that Edwards Investments and Craig Edelman had

9  a pecuniary interest in the outcome of the litigation.  Plaintiffs cannot hide behind

10  Ms. Freedman.  They are equally culpable for the numerous bad faith tactics and

11  vexatious litigation against Ms. Raymer and they should be compelled to explain

12  why they dropped the federal trademark counterfeiting claim against Ms. Raymer

13  and continued to pursue the Preliminary Injunction at the July 7 and August 1

14  hearings anyway.  They should also be compelled to explain why they waited until

15  the very last minute before the August 1 hearing to withdraw the preliminary

16  injunction motion when they could have withdrawn it weeks earlier.

17      **C.   Motion to Dismiss**

18          There are no excuses for Ms. Freedman's and Plaintiffs' actions in this

19  litigation as to Ms. Raymer.  The TRO and Complaints should have not ever been

20  filed against Ms. Raymer.  Ms. Raymer has suffered an indignity by being called an

21  "apparel counterfeiter."  She should not have to suffer the consequences of this

22  action being dismissed without prejudice for fear that Plaintiffs will forge another

23  frivolous complaint against her.

24          Fed. R. Civ. P. 41(a)(2) permits dismissal of an action by: (1) notice of

25  dismissal filed prior to the defendant's opposition to the suit, (2) stipulation of

26  dismissal signed by all the parties to the action; or (3) order of the Court.  "If the

27  voluntary dismissal requires an order of the Court, Rule 41(a)(2) states that the court

28  may grant the dismissal "on terms that the court considers proper."  *Moore's*

*Federal Practice*, § 54.171[4][b], 3d Ed. (2011).  Accordingly, Ms. Raymer requests the following relief:

Issue terms and conditions of the voluntary dismissal on Plaintiffs.  As this case has not yet been entirely disposed because of the sanctions issue, Ms. Raymer requests leave to oppose the dismissal and requests the Court condition dismissal on the following conditions:  (a) if Ms. Raymer decides to dispose of the Primp.com domain name, Plaintiffs are precluded from bringing suit against her based on any contributory liability theory; (b) if Plaintiffs, their heirs, successors, and assigns should decide to refile this lawsuit in the future, Plaintiffs shall, as a condition of filing, bear any of Ms. Raymer's costs and attorneys' fees from this suit; or (c) if Plaintiffs decline to accept these terms and conditions, the case shall be dismissed with prejudice.

### D.    Monetary Sanctions

Plaintiffs' and Ms. Freedman's crusade against Ms. Raymer has been relentless.  Plaintiffs and Ms. Freedman fooled this Court into believing Ms. Raymer was in the apparel business, they applied for a TRO under false pretenses, and tried to use the TRO as a weapon to obtain the Primp.com domain name from Ms. Raymer.  Ms. Raymer prays that the Court sanction Plaintiffs and Ms. Freedman to discourage future parties from bringing frivolous TROs for harassment purposes and to compensate her for the attorneys' fees, litigation costs and other losses she has incurred.

#### 1.    Ms. Freedman:

Ms. Freedman be sanctioned for violating 28 U.S.C. § 1927 by asserting Ms. Raymer infringed the LOVE CRUSH mark when that never occurred, by continuing a preliminary injunction against Ms. Raymer when the federal trademark counterfeiting claim for relief had been withdrawn thereby unnecessarily multiplying the proceedings and wasting judicial resources, by harassing Ms. Raymer by scaring her and causing her undue hardship, and /or based on L.R. 83-7

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

for her reckless conduct, or based on this Court's inherent powers for her bad faith conduct as heretofore described.

2.    <u>Plaintiffs:</u>

Plaintiffs have been fully aware of this litigation and the details of it since its inception.  They do not want to compensate Ms. Raymer for all of the unnecessary legal expenses they made her incur and now think they he can hide behind Ms. Freedman and a motion to dismiss to never make her whole.

Accordingly, Plaintiffs should be sanctioned based on the Court's inherent powers for their active involvement in perpetrating a fraud on the Court by intentionally withholding Edwards Investments and Mr. Edelman's direct pecuniary interests in the litigation, bringing needless litigation against Ms. Raymer forcing her to spend thousands of dollars on her defense in a failed attempt to take away the Primp.com domain name away from her, making material misrepresentations, omissions, suppressing evidence, and unnecessarily multiplying the proceedings with more than 160 docket entries and counting since late May and multiple unnecessary applications and hearings, often caused by litigation misconduct (sealing the record, for example) and or counsel's lack of preparation at hearings.

3.    <u>Plaintiffs and Ms. Freedman:</u>

Plaintiffs and Ms. Freedman be held jointly and severally liable for their bad faith in bringing vexatious litigation against Ms. Raymer in the amount of $96,333.59.  See Leader Decl., ¶ 9.   Plaintiffs should be also be also ordered to take all steps necessary to pay, release or transfer to defendant Raymer any bond Plaintiffs posted in support of the TRO or otherwise.

## IV.   <u>CONCLUSION</u>

Accordingly, and for the foregoing reasons, the Court should: (a) order dismissal of the action with prejudice against defendant VL Raymer, (b) order Plaintiffs and Edwards Investments, and their former counsel Wendy C. Freedman to jointly and severally pay monetary sanctions to Ms. Raymer in the amount of

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**

$96,333.59 within sixty days (whether by release of bonds or otherwise).  If sanctions are not paid within that time, the Court should issue a judgment assigning the Primp trademark to Ms. Raymer.

DATED:  September 26, 2011          LEADER GORHAM LLP


                                    By:  /s/Jon M. Leader
                                         Jon M. Leader

                                    LAW OFFICES OF KAREN J. BERNSTEIN, LLC


                                    By: /s/Karen J. Bernstein
                                         Karen J. Bernstein (*Pro Hac Vice*)

                                    Attorneys for Defendant VL RAYMER

**DEFENDANT RAYMER'S MOTION FOR SANCTIONS**